# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 15-cr-312-1 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| RODERICK V. BURTON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Roderick V. Burton is charged with robbing five banks in violation of 18 U.S.C. § 2113(a). Burton now moves this Court to suppress evidence obtained during a search of his residence, or, in the alternative, to hold an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). For the reasons set forth herein, Burton's motion [30] is denied.

## BACKGROUND

In May 2015, a United States Magistrate Judge issued a search warrant authorizing law enforcement officers to search Burton's residence for evidence related to a string of Chicago bank robberies, based on the affidavit of FBI special agent Nanette L. Doorley. As is pertinent here, the affidavit set forth that between September 25, 2014, and December 31, 2014, five banks located inside Chicago supermarkets (hereinafter identified in chronological order as Bank 1, Bank 2, etc.) were robbed. In each robbery, the suspect, an African-American male who appeared to be around 45 to 50 years old, was over six feet tall, and weighed approximately 230 pounds, handed the teller a note indicating that the bank was being robbed and demanding money. In some of the robberies the suspect appeared to be wearing a fake beard.

In March 2015, surveillance photographs from the five bank robberies were released to local television stations for broadcast. An unidentified confidential informant ("CI") contacted law

1

enforcement to state that he or she recognized the individual in the photographs as Burton. The CI stated that he or she had known Burton for several years and saw him on a regular basis. Upon being shown surveillance photographs from each robbery, the CI again identified Burton as the individual depicted in each instance. The CI also stated that he or she had seen Burton wearing the same coat as was worn by the robber in the surveillance photos from Bank 3, Bank 4, and Bank 5, that he or she had seen Burton wearing the same sunglasses and gold cross on a gold chain as those worn by the robber in the surveillance photos from Bank 2. The CI also noted that, although he had no known employment, Burton had been in possession of large amounts of cash between October 2014 and January 2015, and had purchased new furniture, a large television, and a new computer in late 2014 and early 2015. Agents subsequently obtained Burton's driver's license photograph and his criminal history. Burton, who was recorded as being a black male, 48 years of age, 6'4" tall, and weighing 230 pounds, matched witness descriptions and the surveillance photographs of the robber.

Law enforcement subsequently conducted a photo lineup (containing Burton's photograph and five additional photographs of similar-looking African-American males) with witnesses from each bank. Prior to viewing the photographs, each witness was instructed that the person who committed the robbery might not be among the photographs presented and that they were not required to choose a photograph. The search warrant affidavit states that one witness positively identified Burton as the robber, two witnesses stated that Burton had the same lips and nose as the robber, one witness identified Burton with 50% certainty and noted that he closely resembled the robber,[1] and one witness did not identify Burton (or any other photos in the lineup) as the robber.

---

[1] The government admits that this representation was made in error, based on the testimony of another witness in another photo lineup that did not contain the defendant. This witness actually stated that although Burton had a similar nose and face to the robber, the robber had a lighter skin tone than Burton.

Based on these identifications and the testimony of the CI, Agent Doorley sought a search warrant for Burton's residence, because it was her experience and training that bank robbers commonly hide cash proceeds and other fruits of robberies, as well as evidence and instrumentalities, in the places that they live.

The search warrant application was subsequently approved based on the affidavit, and the search of Burton's residence was conducted on May 22, 2015. Among those items found were a black Calvin Klein pullover, a bag containing a wig, make-up, a latex nose, and two receipts, a black knit cap, a gold chain with a cross, make-up instructions and a pair of eyeglasses. Defendant now moves to suppress this evidence.

**Legal Standard**

The Fourth Amendment generally requires law enforcement to secure a warrant, particularly describing the place to be searched and the person or things to be seized, before conducting a search. U.S. Const. amend. IV; *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). The essential protection of the warrant requirement lies in its mandate that the usual inferences reasonable people draw from evidence must be drawn "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). A magistrate's determination of probable cause is given great deference on review, and the Fourth Amendment requires no more than a substantial basis for concluding that a search would uncover evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a defendant may request an evidentiary hearing to show that a search warrant was invalid and that the search therefore was not constitutionally conducted. A defendant is only entitled to such a hearing, however, upon making a substantial preliminary showing that: (1) the warrant affidavit contained a

3

false statement or omitted a statement; (2) the affiant made or omitted the statement either intentionally or recklessly; and (3) the statement was material or necessary to the finding of probable cause. *Id.* at 155–56.

**Discussion**

Burton first argues that the evidence in this case should be suppressed or that a *Franks* hearing should be held because Agent Doorley failed to include any information about the CI's credibility and failed to independently corroborate the CI's information. When a search warrant affidavit is based solely on an informant's report, the failure to disclose information about the informant's credibility or to independently corroborate the information that they provide can be fatal to a finding of probable cause. *See United States v. Glover,* 755 F.3d 811, 817(7th Cir. 2014) (finding a search warrant affidavit to be insufficient and to impair the neutral role of the magistrate where it omitted relevant, damaging information about an informant's credibility such as his criminal record and his expectation of payment). Here, by contrast, the government disclosed the CI's lengthy criminal record and that he or she was hoping to be rewarded for assisting the government, and made no representations that the informant had proven credible in the past. Moreover, Burton's assertions to the contrary aside, the CI's information was extensively corroborated. The government independently verified Burton's address, confirmed that he matched the appearance of the robber in the surveillance photos, and conducted photo lineups in which Burton was positively identified as being the robber and was repeatedly identified as having similar features to the robber. [2] *See United States v. Hecke,* 329 Fed. App'x 676, 677 (7th Cir. 2009) ("[T]ips from a confidential informant of unproven reliability may support a finding of probable cause as long as the affiant's investigation substantially corroborates the informant's credibility."). Accordingly, the recovered evidence cannot be suppressed on that basis.

---

[2] This Court rejects Burton's conclusory assertion, unsupported by any legal argument, that the inclusion of information about "near identifications" is misleading and is being improperly used to bolster the affidavit.

Burton next contends that there was insufficient evidence to establish probable cause because the evidence contained in the search warrant was based solely on "information from an admitted treasure hunter and a single identification separated by nearly six months from the occurrence." As previously discussed, however, the CIs testimony was subsequently corroborated, thus diminishing concerns about his credibility based on his motives for coming forward. Moreover, the fact that the one positive identification of Burton occurred six months after the robbery does not diminish its reliability when, as here, the witness had adequate opportunity to observe the robber and gave a detailed description of his appearance soon thereafter. *United States v. Moore*, 115 F.3d 1348, 1360 (7th Cir. 1997).

Burton also alleges that the affidavit failed to disclose several additional incidents in which eyewitnesses failed to identify Burton or indicated that he was not the offender. Indeed, the government concedes that the affidavit failed to mention two witnesses who did not identify anyone in the photo lineup and that, as previously noted, one victim's statement regarding Burton was incorrectly related in the affidavit. Burton, however, does not argue that these omissions occurred due to intentional or reckless conduct or that the additional information they involve would have undermined the magistrate judge's finding of probable cause.[3] Accordingly, Burton has not demonstrated that he is entitled to a *Franks* hearing on that basis. *Franks*, 438 U.S. at 155–56.

Finally, Burton contends that a *Franks* hearing is required because Agent Doorley misled the Magistrate Judge by stating that her experience and training made her aware that "bank robbers commonly hide cash proceeds and other fruits of bank robberies, as well as evidence and instrumentalities such as money bands, demand notes, clothing and disguises in the places that they

---

[3] The omitted non-identifications were made by an employee at Bank 1 and an employee at Bank 4, neither of whom directly interacted with the robber. By contrast, the teller from Bank 1 who interacted with the robber positively identified Burton, while the teller from Bank 4 who interacted with the robber while he was wearing a fake beard stated that Burton's lips and nose were similar to those of the robber. Thus, the non-identifications do not substantially diminish the credibility of the positive identification and the reports of similarities between Burton and the robber.

live" when no such evidence was recovered in this case. To the contrary, the search yielded evidence that Agent Doorley predicted might be recovered, including disguises (e.g. a latex nose, make-up, and a wig) and clothing allegedly worn during the robberies. Moreover, even if such evidence had not been recovered, that would in no way have affected the truthfulness of Agent Doorley's statement that her training and experience indicated that such evidence might be recovered.

Because this Court finds that Burton has not made a substantial preliminary showing that the warrant was procured through deliberate or reckless misrepresentations in the warrant affidavit that were necessary to probable cause, a *Franks* hearing is unnecessary. This Court therefore holds that the search warrant affidavit was adequate to establish probable cause, and that the evidence resulting from the search therefore is not subject to suppression.

**Conclusion**

For the foregoing reasons, Burton's Motion to Suppress Evidence and Motion for a Franks Hearing [30] is denied.

Date: January 15, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge